L. T. THORNTON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 60310, 62218.

Court of Criminal Appeals of Texas, Panel No. 3.

Nov. 21, 1979.
On Rehearing July 16, 1980.

Ralph Taite, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Fred C. McDaniel and Kevin A. Byrne, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Alfred Walker, Asst. State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from an order revoking probation. On December 7, 1977, appellant

entered a plea of guilty to the offense of forgery. Punishment was assessed at ten years confinement, but imposition of sentence was suspended and appellant was placed on probation. On June 1, 1978, after a hearing, an order was entered revoking appellant's probation after his entry of a plea of "true" to allegations that he had violated the terms and conditions of his probation.

In his first ground of error, appellant contends that, "there was no evidence produced at appellant's plea of guilty to support the allegations in the indictment." In *Ex parte Dantzler*, 571 S.W.2d 536 (Tex.Cr. App.1978), we reiterated that it is well settled that the sufficiency of the evidence may not be collaterally attacked. *Owens v. State*, 540 S.W.2d 324 (Tex.Cr.App.1976); *Gaines v. State*, 501 S.W.2d 315 (Tex.Cr. App.1973). However, in *Ex parte Moffett*, 542 S.W.2d 184 (Tex.Cr.App.1976), we created an exception to the foregoing rule which prohibits collateral attacks on the sufficiency of the evidence. Therein, we allowed the defendant to collaterally attack an order revoking his probation where the revocation order was based upon *no* evidence. We held that since there was *no* evidence, not merely insufficient evidence, to support the order revoking probation, the defendant's right to due process had been violated and that this violation of a defendant's right to due process justified a collateral attack by habeas corpus. See also, *Ex parte Dantzler*, supra.

In the instant case, the indictment, in pertinent part, alleged that appellant,

"did then and there unlawfully, knowingly and intentionally with intent to defraud and harm another, forge, *by passing to B. J. Epley*, a writing which then and there purported to be but was not the authorized act of J. R. Oates and L. C. Bates, said writing being of the tenor following: [at which place a copy of the check was set out] said defendant knowing the same to have been forged . ."
(Emphasis added)

At the hearing on appellant's plea of guilty, the State introduced into evidence appellant's signed judicial confession, in which he stated:

"I judicially confess that on the 1st day of July, 1977, in Dallas County, Texas, I did then and there with intent to defraud and harm, knowingly and intentionally, forge, *by making a writing*, a true copy of which is attached to the indictment and the original of which is attached to this stipulation, as charged in the indictment."
(Emphasis added)

Thus, it appears that appellant was indicted for forgery *by passing* a writing, and he confessed to forgery *by making* a writing. These are two separate offenses. V.T. C.A. Penal Code, Sec. 32.21, provides in part:

"(a) For purposes of this section:
(1) 'Forge' means:
(A) to alter, make, complete, execute or authenticate any writing

. . .

\* \* \* \* \* \*

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged

. . .

\* \* \* \* \* \*

(b) A person commits an offense if he forges a writing with intent to defraud or harm another."

In *Reid v. State*, 560 S.W.2d 99 (Tex.Cr. App.1978), we were confronted with a robbery indictment which alleged that the defendant committed the robbery and *caused* serious bodily injury to the complainant. See V.T.C.A. Penal Code, Sec. 29.02(a)(1). The only evidence admitted in support of the defendant's guilty plea was his judicial confession in which he admitted that he committed robbery and *threatened* and *placed* the complainant in *fear* of serious bodily injury. See V.T.C.A. Penal Code, Sec. 29.02(a)(2). We held:

"While this confession was sufficient to show that appellant was guilty of robbery under V.T.C.A. Penal Code, Sec. 29.-02(a)(2), that offense was not alleged in the indictment. Since there was *no proof* that, during the robbery, appellant intentionally and knowingly caused bodily injury to the complainant, the evidence was insufficient to sustain a conviction for robbery under V.T.C.A. Penal Code, Sec. 29.02(a)(1), as alleged in the instant indictment." (Emphasis added)

Since there was no evidence to support the defendant's guilt of the offense charged in the indictment, the judgment was reversed.

Clearly, here, as in *Reid v. State,* supra, the admissions of the appellant in his judicial confession will not support a conviction based upon the offense charged in the indictment. We have carefully reviewed a complete transcript of the court reporter's notes from the trial on appellant's plea of guilty contained in the record. Cf. *Wolfe v. State,* 560 S.W.2d 686 (Tex.Cr.App.1978). There is no other evidence contained therein to support appellant's guilt of forgery by passing.[1] Since there is no evidence in the record to support appellant's conviction for forgery by passing, as alleged in the indictment, the judgment is reversed and the trial court is ordered to enter a judgment of acquittal.

Before the Court en banc.

## OPINION ON MOTIONS FOR REHEARING

CLINTON, Judge.

█ This case has a somewhat unique history. In cause number 60,310, currently before us on the State's motion for rehearing, a panel of this Court on original submission of an appeal from an order revoking probation reversed the primary conviction and ordered a judgment of acquittal.

The panel held that where the indictment for the primary offense alleged the offense of forgery by *passing* and appellant "judicially confessed" to the offense of forgery by *making,* and there was *no evidence* tending to support appellant's conviction for the former offense, appellant could successfully collaterally attack the validity of his conviction. See *Ex parte Moffett,* 542 S.W.2d 184 (Tex.Cr.App.1976); *Ex parte Dantzler,* 571 S.W.2d 536 (Tex.Cr.App.1978). This Court's decision was delivered on November 21, 1979 as was the panel decision in cause number 62,218, currently before us on the appellant's motion for rehearing.

Cause Number 62,218 similarly involved an appeal taken from a second order revoking probation after appellant had been admitted to bail pending our disposition of cause number 60,310. The unpublished panel opinion, 589 S.W.2d 721, in cause number 62,218, which is now withdrawn, declined to decide his "no evidence" contention (successfully advanced by appellant in cause number 60,310) because a record of the evidence adduced at the guilty plea hearing on the primary offense had not been included in that appellate record. *Wolfe v. State,* 560 S.W.2d 686, 688 (Tex.Cr. App.1978); see *Traylor v. State,* 561 S.W.2d 492, 494–95 (Tex.Cr.App.1978).

We granted appellant leave to file a motion for rehearing in cause number 62,218 in view of his vigorous contention that the reversal and reformation of the judgment in cause number 60,310 to show an acquittal mandates that the panel opinion in cause number 62,218 be similarly reformed. Additionally, we granted the State leave to file a motion for rehearing in cause number 60,310 to consider its stoutly urged position that the dictates of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) do not apply to

---

1. The only evidence in support of appellant's guilt of the offense is his statement that the contents of the *confession* were substantially true and correct. However, this confession was to a different offense than that charged in the indictment.

pleas of guilty. For reasons that follow, we find with appellant in both causes.

Turning first to cause number 60,310, the finding of "no evidence" by the panel is not contested by the State, and is correct. Any further discussion of that matter would not be at all edifying.

As to the State's contention that *Burks v. United States*, and *Greene v. Massey*, both supra, do not apply in situations where the accused pleads guilty, we believe that a reading of those cases clearly shows it is without merit.

*Burks v. United States*, supra, at 11, 98 S.Ct. at 2147, teaches that the Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. In distinguishing between those instances where an accused is afforded a new trial on the basis of "trial error" [i. e., incorrect receipt or rejection of evidence, incorrect instructions, prosecutorial misconduct] and those cases where the basis for appellate reversal is evidentiary insufficiency, the Court pointed out:

"In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defend-

ant. . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, *for it has been given one fair opportunity to offer whatever proof it could assemble.*" [1]

*Id.* at 16, 98 S.Ct. at 2149 [footnote omitted].

■ The State would have us accept the notion that society would seemingly have no interest in denying the State that "second bite at the apple" where the record "contains not one scratch of a pen to indicate innocence." Yet to adopt this rationale is to blink at the jeopardy lessons of *Burks.* The principle at work is failure to prove guilt, not indications of innocence. All sorts of considerations may motivate a guilty plea.[2] And while it is true that an accused is not entitled to have his plea accepted, *North Carolina v. Alford*, note 2, once he tenders it and the State proceeds to prosecute on that basis, clearly jeopardy has attached.[3] Just as the State has the burden of proof in a jury trial on a plea of not guilty, so also under Article 1.15, V.A.C. C.P.[4] in a bench trial on a plea of not guilty and a plea of guilty or nolo contendere.[5]

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. See *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

3. Whether when he pled to the indictment, *Vardas v. State*, 518 S.W.2d 826 (Tex.Cr.App. 1975), or when the trial court began to receive evidence, *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), or to consider an agreed statement of facts in the form of a written judicial confession offered by the State, *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), appellant was placed in jeopardy.

4. In his Special Commentary following Article 1.15, supra, Presiding Judge Onion writes, "In felonies less than capital where the defendant has entered a plea (of guilty, nolo-contendere, or not guilty) before the court after waiving jury trial, the State is required to produce sufficient evidence to support the guilt of the defendant."

5. The instant case comes to us as an appeal from a guilty plea trial and is, therefore, on a different footing than the *Duran* litigation, upon which the dissent relies. Obviously through inadvertence, the writer being the same, the dissent says Duran entered a plea of guilty; but the cause number 53,652 at issue in *Duran v. State*, 552 S.W.2d 840 (Tex.Cr.App. 1977) was tried on a plea of *not* guilty, *id.*, at 842. Further, we observe that the problem in

The matter before the Court is, so far as we have ascertained, one of first impression. Yet, it is beyond argument that appellant could not be convicted for the charged offense of forgery by passing, regardless of his entry of a guilty plea to such offense, if the State's Evidence proved only that he committed the offense of forgery by making. See *Reid v. State*, 560 S.W.2d 99 (Tex.Cr.App.1978). As the Supreme Court noted in *Burks v. United States*:

> ". . . [I]t is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty."

*Id.* 437 U.S. at 16, 98 S.Ct. at 2150. There is no greater societal interest we perceive in retrying an accused after a judge has done what a jury may not. The trial court, as a matter of law, while empowered to accept the guilty plea, was not authorized to *find him guilty* on the basis of the State's evidence.[6] We agree with the Supreme Court that there is no compelling interest in retrying an accused after the State has already had "its turn at bat"—before a judge or jury—though the Supreme Court spoke in the context of a jury trial.

But in Texas, impelled by experienced abuse and oppression inflicted on them as citizens in earlier governments,[7] the Framers of the Constitution of the Republic insisted upon trial "by an impartial jury," Constitution of 1836, Sixth Declaration of Rights, 3 Vernon's Texas Constitution 535; today, as adopted in 1876, Article I, Section 10, grants an accused the right to trial "by an impartial jury," 1 Vernon's Texas Constitution 266, and Section 15, *id.*, at 356 mandates, "The right of trial by jury shall remain inviolate."

---

*Duran* was a purported oral stipulation, without written consent by accused and approval by the trial court to its introduction, *id.*, at 843, whereas here there were just such consent and approval, as well as a written judicial confession to an offense—albeit not the one alleged in the indictment. Accordingly, we need not now determine whether *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App.1979) was correctly decided, for its factual basis is distinguishable.

6. The core of the dissent is that appellant's plea of guilty "*in the constitutional sense*, was sufficient evidence to sustain the judgment of conviction." No authority is cited—constitutional provision, judicial decision, treatise or other work—to support the concept, and we have found none. To be sure, at English common law a "conviction" was "the confession of the accused in open court or the verdict returned against him by the jury," Black's Law Dictionary (Rev. Fourth Ed.) 403, or as Blackstone put it, "[a] conviction may occur two ways: Either by his confessing the offense and pleading guilty, or by his being found so by the verdict of his country," 4 Blackstone Commentaries 262. In this country there is, also, "federal common law" to which federal courts resort to resolve a federal question as to which the federal Constitution, treaties and statutes are silent, 15A C.J.S. Common Law § 16 at p. 73. In Federal Courts, that is based, in part at least, on "so much of the common law as may be implied in the subject," *Smith v. Alabama*, 124 U.S. 465, 479, 8 S.Ct. 564, 569, 31 L.Ed. 508 (1888); see also 36 C.J.S. Federal Courts § 169(2) at pp. 353–354—Sources of Federal Law. The statement by Mr. Justice Douglas in

*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1979), quoted in the dissenting opinion, mirrors the English and certainly is a part of the federal common law, but neither Mr. Justice Douglas nor the opinion he invites us to see, *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), even suggests the proposition is derived from a constitutional provision, or is of constitutional dimension. It is not, as the earlier opinion by Mr. Justice Black in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) demonstrates by citing authorities in support of the *Kercheval* declaration—every one of them, Blackstone, Bowyer and Orfield, being direct English common law commentaries or indirectly drawn from that source, *id.*, at 719, n.5, 68 S.Ct. at 321, n.5; see also Orfield, Criminal Procedure from Arrest to Appeal (1974 edition) 291, note 114. The doctrine, adopted from the English common law, has become part of the federal common law; it is not of constitutional origin.

7. One of the grievances forcefully expressed in The Declaration of Independence by the Delegates of The People of Texas was that the government "has failed and refused to secure, on a firm basis, the right of trial by jury, that palladium of civil liberty, and only safe guarantee for the life, liberty, and property of the citizen." 3 Vernon's Texas Constitution 520.

For a short history of trial by jury in criminal cases elsewhere, see *Duncan v. Louisiana*, 391 U.S. 145, 151–153, 88 S.Ct. 1444, 1448–1450, 20 L.Ed.2d 491 (1968).

So it was that, early on, while pleas of guilty were permitted, one was regarded not the equivalent of a confession of judgment in civil proceedings but rather nothing more than an acknowledgement of the facts charged, and whether those facts constituted an offense was left open to be decided by the court, *Crow v. State*, 6 Tex. 334 (1851); if they did, still the law mandated that a jury assess punishment. See Article 26.14, V.A.C.C.P. and its predecessors. The public policy considerations underlying the hybrid procedure, often overlooked even today, are considerable, just as they were when explained by Presiding Judge W. L. Davidson in *Woodall v. State*, 58 Tex.Cr.R. 513, 126 S.W. 591, 593:

"... Of course, this article means that evidence must be introduced before the jury, so that the state and the defendant may be protected in their respective rights, the defendant getting the benefit of any amelioration or extenuation, and the state any aggravating circumstances that might attend the commission of the offense; and, it has been held that this statute is mandatory, and, instead of being merely for the benefit of the defendant, it is more especially designed to protect the interest of the state, by preventing aggravated cases of crime being compromised by the assessment of the minimum punishment."

And from experience in effectuating the procedure arose a manifestly just rule that although an accused plead guilty "and the facts develop that he is not guilty . . . it would be the duty of the court to see that no conviction was had" for, as the Court insisted in *Harris v. State*, 76 Tex.Cr.R. 176, 172 S.W. 975, 977 (Tex.Cr.App.1915):

"... Our law only authorizes a conviction where guilt is shown. If there be no legal guilt, a conviction could not be

sustained, although the defendant entered a plea of guilty."

With this significant historical background and an attributed awareness of settled policy determinations, in 1931 by former Articles 10a, 11 and 12, C.C.P. 1925, did the Legislature authorize waiver of jury trial in a non-capital felony case upon entry of a plea of guilty by the accused.[8] *McMillan v. State*, 122 Tex.Cr.R. 583, 57 S.W.2d 125 (1933) held that the Legislature was empowered to do so, and in *Bolton v. State*, 123 Tex.Cr.R. 543, 59 S.W.2d 833 (1933) the Court further explained that the 1931 act provided "a way in which an accused, under the formalities specified, could have a *trial* before the judge without a jury upon a plea of guilty," pointing to the following requirement that the Court underscored:

"... It shall be necessary for the State to introduce evidence into the record showing the guilt of the defendant, *and said evidence shall be accepted by the Court as the basis for its verdict*, and in no event shall a person charged be convicted upon his plea of guilty without evidence to support the same."

Today in Article 1.15, supra, the sentence reads as a proviso, and "verdict" has been changed to "judgment:"

"... provided, however, that it shall be necessary for the State to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same."

 Thus the constitutional principle involved here is rooted in the federal and State guarantees of right to trial by jury[9]

---

8. As amended and added to by Acts 1931, 42nd Leg., ch. 43, p. 65, §§ 1, 2, and 3, these articles conditioned effectiveness of the waiver by an accused upon consent and approval by the State and the trial court, thereby guaranteeing a right of trial by jury to the prosecution in order to preserve those interests of the State that Presiding Judge Davidson found in *Wood-*

*all,* supra, the earlier law was designed to protect.

9. Article 1.15, supra, is a prohibition against *convicting* an accused of a felony except upon the verdict of a jury unless in other than capital cases the accused waives his right to trial by jury and the consequential requirements of proof are met by the State. By withholding

rather than considerations of due process or due course of law. But even for due process purposes it is entirely too simplistic merely to invoke the common law notion of a plea of guilty since, before it may be given that effect, the plea must satisfy stringent procedural requirements constitutionally and statutorily imposed.[10] Accordingly, it is settled that regardless of the depth of one's desire to enter a plea of guilty an accused does not have a constitutional right to have it accepted by the trial court. *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11,[11] 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970). Yet, "In view of the strong factual basis for the plea *demonstrated by the State*[12] and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it," *id.*, at 38, 91 S.Ct. at 168. In Texas, evidence is received to support the judgment, not to accept a plea.

■ Clearly, then, the federal constitutional principle guiding the Supreme Court in *Alford* is that the States are free to reject the common law effect of a plea of guilty and adopt their own measures to govern their own trial courts in trying the guilty plea case, including a requirement

that sufficient evidence be presented by the State to show guilt. In short, the concept of "Our Federalism"[13] militates against directed application of the federal view of consequences of a guilty plea to an otherwise constitutional procedure adopted by a State to convict on a guilty plea when trial by jury has been waived. Indeed, just such a "hands-off" attitude is reflected generally by the *Brady* trilogy[14] and particularly in *Brady*, itself, when indicating what is expected of the States' guilty plea trials:

". . . This mode of conviction is not more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial. * * * But our view . . . is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admissions that they committed the crimes with which they are charged." *Id.*, at 264–265.

Obviously the requirements of Article 1.15, supra, that the State produce proof of the

---

consent, however, the State preserves its right to a jury.

**10.** Article 26.13, V.A.C.C.P., and its federal counterpart, Rule 11, F.R.Crim.P., were intended and are frequently redesigned to "govern[ ] the duty of the trial judge before *accepting* a guilty plea," *Boykin v. Alabama*, 395 U.S. 238, 243, n.5, 89 S.Ct. 1709, 1712, n.5, 23 L.Ed.2d 274 (1969). Under the former a proper admonishment by the trial court is mandatory, e. g., *Ex parte Jordan*, 490 S.W.2d 585 (Tex.Cr.App. 1973) and under the latter "prejudice inheres" in failure of a trial judge to comply with its requirements, *McCarthy v. United States*, 394 U.S. 459, 471, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969).

**11.** "Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court . . . although the States may by statute or otherwise confer such a right. Likewise, the States may bar their courts from accepting

guilty pleas from any defendants who assert their innocence."

**12.** From the following account we guess that the procedure for a trial on a plea of guilty is somewhat similar to our own:

"Before the plea was finally accepted by the trial court, the court heard the sworn testimony of a police officer who summarized the State's case. Two other witnesses were also heard. * * * After the summary presentation of the State's case, Alford took the stand and testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so."

**13.** *Douglas v. City of Jeannette*, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1942).

**14.** *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

"accuracy and reliability" of the guilty plea, more than meets the expectations of the Supreme Court and certainly is not likely to be disapproved because it goes beyond the federal common law doctrine of conviction by guilty plea. That is substantially what *Alford*, supra, holds.

■ Thus, it matters not at all that the common law viewed a plea of guilty as a conviction, nor is it all that clear that such view is "the constitutional sense." What does matter and what is clear is that Texas is not, and patently has not subjected itself to be, bound by any such federal common law doctrine of conviction by plea. That doctrine simply has not been imposed on the criminal law of this State by the Constitution of the United States or by the Supreme Court of the United States directly or through Fourteenth Amendment "incorporation" or any other fashion. The dissent cites no authority and we venture the thought that there is none. To the contrary, as has been demonstrated *ante*, the proscription of Article 1.15 that "in no event shall a person charged be *convicted* upon his plea without sufficient *evidence* to support the same" not only passes constitutional muster but also has little to do with admonishing an accused before *accepting* a guilty plea.[15]

■ Therefore, based on deeply felt and stoutly maintained considerations of public policy that produced, *inter alia*, Article I, §§ 10 and 15 of the Constitution of Texas and Article 1.15 of its code of criminal procedure, and borrowing the *Burks-Greene* rationale, we hold that the jeopardy proscriptions of Article I, § 14 of the Constitution of Texas and its implementing statutory provisions are fully applicable to a trial of a guilty plea where the evidence introduced by the State to show the guilt of an accused and accepted by the trial court fail as a matter of law to constitute sufficient evidence to support the judgment of conviction.

The State's motion for rehearing in cause number 60,310 is denied; and appellant's motion for rehearing in cause number 62,-218 is granted and the affirmance in the latter cause is withdrawn and the revocation proceeding is ordered dismissed.

It is so ordered.

DALLY, Judge, dissenting on motions for rehearing.

The majority holds that when a judgment is reversed because of non-compliance with Art. 1.15, V.A.C.C.P., retrial of the defendant would place him twice in jeopardy for the same offense, violating his rights accorded by the Fifth Amendment to the Constitution of the United States. The majority say this is required by the recent Supreme Court decisions in *Burks v. United States*, 437 U.S 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). I disagree.

There is no claim here that the appellant's guilty plea was not entered voluntarily and understandingly. The United States constitutional guarantee of the Fourteenth Amendment as interpreted in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), was met. In that opinion Mr. Justice Douglas speaking for the majority said: "A plea of guilty is more than a confession which admits the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." However, in Texas the Legislature in its wisdom had made an additional requirement that:

"No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless in felony cases less than capital, the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce

---

15. Which, of course, is what Rule 11, supra, is all about. *McCarthy v. United States*, supra, *United States v. Dayton*, 604 F.2d 931 (5 Cir. En Banc 1979); see also *United States v. John-* son, 546 F.2d 1225 (5 Cir. 1977) for a delineation of that which constitutes "a factual basis" for a guilty plea in order for a federal court to accept it.

evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause." Art. 1.15, V.A.C.C.P.

So, in the constitutional sense, the appellant in his plea of guilty, which it is uncontroverted was voluntarily and knowingly made, admitted that he did the acts of which he was accused, and the plea of guilty was itself a conviction. *Boykin v. Alabama*, supra. The appellant's plea of guilty, in the constitutional sense, was sufficient evidence to sustain the judgment of conviction. Therefore the appellant's conviction is not being reversed because there is insufficient evidence to support the conviction as required by the due process clause of the Fourteenth Amendment of the Constitution of the United States, but it is being reversed because the trial court incorrectly accepted, in attempting to comply with Art. 1.15, V.A.C.C.P., a stipulation of evidence that was not sufficient to support the plea. When the stipulation of evidence was offered i. e., the stipulation that the appellant had forged the instrument which did not support the allegation that he passed the forged instrument, the court clearly committed a trial error. This judgment should be reversed because of that trial error of the court in accepting the stipulated evidence offered, which did not comply with the requirements of Art. 1.15, V.A.C.C.P.

Moreover, the holding of the majority here cannot be satisfactorily reconciled with the holding of a panel of this Court in *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App. 1979). In that case a judgment had been reversed on appeal because there was a failure to comply with Art. 1.15, V.A.C.C.P. *Duran v. State*, 552 S.W.2d 840 (Tex.Cr. App.1977). The panel held that a subsequent trial and conviction on a plea of guilty for the same offense did not place the petitioner twice in jeopardy. The panel held that the reversal was caused by trial error, not insufficiency of evidence.

Duran entered a plea of guilty and the State, to meet the requirements of Art. 1.15, V.A.C.C.P., relied on a stipulation of evidence which was entered into by the petitioner's attorney but to which the petitioner had not personally agreed in writing as required by Art. 1.13, V.A.C.C.P. The panel held that the trial judge should not have accepted the stipulation of evidence, and if the trial judge had properly refused to accept the stipulation the State quite likely would have obtained from the petitioner his written agreement to the stipulation or would have offered other evidence to support the plea as required by Art. 1.15, V.A.C.C.P. The same reasoning is certainly applicable here. It was alleged that the appellant passed a forged instrument. The stipulation offered was that the appellant had forged the instrument. Since the stipulation offered to meet the requirements of Art. 1.15, V.A.C.C.P., did not properly support the plea, the trial court should not have accepted the stipulation in evidence. Thereafter, the State would not have rested, but would have obtained a proper stipulation or would have offered other evidence to support the plea as required by Art. 1.15, V.A.C.C.P. If the State did not offer proper evidence, of course, the court should *not* have accepted the plea of guilty.

The majority leaves many questions. Is the State barred from seeking an indictment of the appellant for forgery—the offense to which appellant confessed in open court? If an indictment for forgery were returned could the appellant be prosecuted for that offense? Would the appellant's

judicial confession then be admissible against him in the prosecution for forgery?

If the majority interprets *Burks v. United States*, supra, and *Greene v. Massey*, supra, as they do here, they will, in my opinion, needlessly and without lawful reason require the acquittal of many criminals who have entered pleas of guilty.

I dissent to the majority opinion; the State's Motion for Rehearing should be granted.

ONION, P. J., and DOUGLAS and TOM G. DAVIS, JJ., join in this dissent.